**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| FRANCIS JOHNSON, ) <br> ) <br> Plaintiff, ) <br> vs. ) <br> ) <br> STATE OF NEVADA, *et al.*, ) <br> ) <br> Defendants. ) <br> ) | Case No.: 2:14-cv-1425-GMN-PAL <br><br> **ORDER** |

Pending before the Court is a Motion for Summary Judgment, (ECF No. 53), filed by *pro se* Plaintiff Francis Johnson ("Plaintiff").[1] Defendants Officer Miguel Flores-Nava, Jennifer Nash, and Sheryl Foster (collectively "Defendants") filed a Response, (ECF No. 59). Plaintiff did not file a reply, and the deadline to do so has passed.

Also pending before the Court is Defendants' Motion for Summary Judgment, (ECF No. 56). Plaintiff filed a Response (ECF No. 60), and Defendants filed a Reply, (ECF No. 63).[2] For the reasons discussed below, Plaintiff's Motion is **DENIED**, and Defendants' Motion is **GRANTED**.

---

[1] In light of Plaintiff's status as a pro se litigant, the Court has liberally construed his filings, holding him to standards less stringent than formal pleadings drafted by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

[2] Also pending before the Court is Plaintiff's Motion to Remove Exhibit B from Record. (ECF No. 72). Because Exhibit B does not enter into the Court's analysis, Plaintiff's Motion to Remove Exhibit B from the Record is DENIED as moot.

Plaintiff also filed a Motion to Strike Defendants' Response to Plaintiff's Motion for Summary Judgment ("MSJ"), (ECF No. 59), and Defendants' Reply to Plaintiff's Response to Defendants' MSJ, (ECF No. 63), as untimely filed. (*See generally* Mot. to Strike, ECF No. 92). The deadlines for both documents fell on a weekend, and Defendants filed their responsive pleadings the following Monday. The Court therefore finds that both Defendants' Response and Reply were timely filed pursuant to Federal Rule of Civil Procedure 6(a). Fed. R. Civ. Pro. 6(a)(1)(C) ("[I]f the [Court's deadline] is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday."). Accordingly, Plaintiff's Motion to Strike Defendants' Response and Reply is DENIED.

## I. BACKGROUND

This case arises out of a prisoner's First Amendment retaliation claim pursuant to 42 U.S.C. § 1983. (*See* Screening Order 5:13–19, ECF No. 18). Plaintiff is an inmate in the lawful custody of the Nevada Department of Corrections ("NDOC"). (Defs.' Mot. Summ. J. ("Defs.' MSJ") 2:23–24, ECF No. 56). Plaintiff brings this suit against Defendants for events that took place during Plaintiff's incarceration at High Desert State Prison ("HDSP"). (Am. Compl. at 1, ECF No. 19).[3]

On February 28, 2013, Officer Miguel Flores-Nava ("Officer Flores-Nava"), an HDSP correctional officer, conducted a search of Plaintiff's cell and confiscated Plaintiff's beard trimmers as unauthorized property. (Ex. I to Defs.' MSJ at 2 ("Disciplinary Records"), ECF No. 56-9). According to Plaintiff, Officer Flores-Nava did this despite being advised by the property room sergeant that the trimmers were part of a property settlement with Plaintiff. (Am. Compl. at 4). Plaintiff also claims that following the search, Officer Flores-Nava told Plaintiff that he intended to file a notice of charges and have Plaintiff transferred to the disciplinary unit, lose his job status, and lose his wages. (*Id.* at 4–5). Plaintiff contends that he asked Officer Flores-Nava why he was doing this, and Officer Flores-Nava responded that it was because "[Plaintiff] like[d] filing grievances and lawsuits on officers and if [he didn't] like it, [he should] take it up with the disciplinary officer." (*Id.* at 5). Officer Flores-Nava then allegedly warned Plaintiff to "stop filing grievances and lawsuits." (*Id.*). Although Officer Flores-Nava admits speaking with Plaintiff following the search, Officer Flores-Nava denies making these statements. (*See* Flores-Nava Decl. ¶¶ 8–10, Ex. C to Defs.' MSJ, ECF No. 56-3). Subsequently, Officer Flores-Nava filed a notice of charges for possession of unauthorized property against Plaintiff. (Disciplinary Records at 2). Plaintiff was served with this notice on March 5, 2013. (*Id.*).

---

[3] Plaintiff is currently housed at Ely State Prison. (*See* Pl.'s Notice of Change of Address, ECF No. 85).

On the same day, Plaintiff alleges he met with a caseworker who informed Plaintiff that he was terminated from his work assignment in the infirmary and would consequently be demoted from a Level I designation and transferred to a Level II housing unit. (Ex. L to Defs.' MSJ ("Grievance Issue 58154") at 5, ECF No. 56-12); (*see also* Ex. H to Defs.' MSJ, ECF No. 56-8) (requiring Level I inmates to be discipline free for ninety-days and to maintain a work assignment in order to remain at Level I). On March 11, 2013, Plaintiff was reassigned to a Level II housing unit. (*See* Ex. A. to Defs.' MSJ, ECF No. 56-1); (*see also* Nash Decl. ¶ 6, Ex. D to Defs.' MSJ, ECF No. 56-4).

On April 2, 2013, Plaintiff appeared at a disciplinary hearing regarding Officer Flores-Nava's notice of charges. (Disciplinary Records at 4). The presiding hearing officer confirmed that the trimmers were Plaintiff's property and dismissed the charges against Plaintiff. (*See id.* at 4–6); (*see also* Grievance Issue 58154 at 17, 30–31).

According to Plaintiff, on April 10, 2013, he informed Trinity Pharris ("Pharris"), an HDSP caseworker, that the notice of charges had been dismissed and requested reinstatement back to his work assignment. (Am. Compl. at 6). Plaintiff further claims that on April 17, 2013, Pharris told Plaintiff that she planned to find him the "worst possible job assignment." (*Id.* at 7). Plaintiff alleges that when he told Pharris she did not have the authority to change his classification, Pharris replied: "[Y]ou are right . . . but since you like filing lawsuits and grievances I can transfer you to [Level III, the disciplinary unit,] and that will change your classification." (*Id.*). Plaintiff was subsequently transferred to the disciplinary unit. (*Id.*).[4]

As a result of these events, Plaintiff filed two separate grievance issues: Grievance Issue 2006-29-60267 ("Grievance Issue 60267") and Grievance Issue 58154. (*See* Ex. M to Defs.' MSJ, ECF No. 56-13).

---

[4] According to Defendants, Plaintiff was reassigned to a Level IV housing unit. (Defs.' MSJ 5:1–2).

On June 26, 2014, Plaintiff filed this action in state court. (Compl., Ex. A to Notice of Removal, ECF No. 1-2). Defendants NDOC and Officer Flores-Nava subsequently removed the action to this Court on September 3, 2014. (Not. of Removal, ECF No. 1). On December 22, 2014, Plaintiff filed an Amended Complaint adding Pharris,[5] Associate Warden Jennifer Nash ("Nash"), and Deputy Director Sheryl Foster ("Foster") as defendants.[6] (Am. Compl. at 1–3). Plaintiff claims that Nash is liable for her subordinates' actions because she failed to rectify their actions after Plaintiff filed an informal grievance with her about this issue. (*Id.* at 9). Plaintiff similarly alleges that Foster is liable because she failed to rectify Plaintiff's situation after Plaintiff filed a first level grievance with her. (*Id.* at 11). Based on these allegations, Plaintiff alleges First Amendment retaliation against all defendants. (*Id.* at 11, 14). In the instant Motion, (ECF No. 56), Defendants Officer Flores-Nava, Nash, and Foster seek summary judgment on this claim.

## II.   LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict

---

[5] Pursuant to Federal Rule of Civil Procedure 4(m), Plaintiff was required to accomplish service on Defendant Pharris by July 2015. (Order Den. Mot. Default J. 5:22–23, ECF No. 89). Plaintiff has failed to serve Pharris within the given deadline. (*Id.* 6:4–9).

[6] Plaintiff also names NDOC and Warden Dwight Neven ("Neven") as defendants. However, NDOC and Neven are no longer parties to this claim. (Screening Order 6:16–23, ECF No. 18).

in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid

summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.  The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## III.  DISCUSSION

In their Motion for Summary Judgment, Defendants argue, *inter alia*, that Plaintiff failed to exhaust his administrative remedies prior to bringing this action because he did not properly exhaust NDOC's grievance procedure. (Defs.' MSJ 15:10–17:2, ECF No. 56).  The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  Exhaustion in prisoner cases is mandatory. *Woodford v. Ngo*, 548 U.S. 81, 84 (2006).  The PLRA requires "proper exhaustion" of administrative remedies. *Id.* at 93.  Proper exhaustion "means that a grievant must use all steps the prison holds out, enabling the prison to reach the merits of the issues." *Griffin v. Arpaio*, 557 F.3d 1117, 1119–20 (9th Cir. 2009).

Courts should decide exhaustion before examining the merits of a prisoner's claim. *Albino v. Baca*, 747 F.3d 1162, 1170 (9th Cir. 2014).  The defendant bears the initial burden to show that there was an available administrative remedy and that the prisoner did not exhaust it. *Id.* at 1169, 1172.  Once that showing is made, the burden shifts to the prisoner, who must

either demonstrate that he, in fact, exhausted administrative remedies or "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* at 1172. The ultimate burden, however, rests with the defendant. *Id.* Summary judgment is appropriate if the undisputed evidence, viewed in the light most favorable to the prisoner, shows a failure to exhaust. *Id.* at 1166, 1168; *see* Fed. R. Civ. P. 56(a).

To determine whether Plaintiff properly exhausted the available administrative remedies pursuant to the PLRA, the Court will address each of Plaintiff's two grievance issues in turn.

### A.   Grievance Issue 60267

Regarding Grievance Issue 60267, Defendants argue that Plaintiff abandoned his attempts to exhaust his administrative remedies before the conclusion of the grievance process. (Defs.' MSJ 16:24–26). The Court agrees.

Defendants' Motion for Summary Judgment includes a copy of the NDOC Administrative Regulation ("AR") 740, entitled "Inmate Grievance Procedure," which governs NDOC's grievance policy. (AR 740, Ex. N to Defs.' MSJ, ECF No. 56-14). In order for a plaintiff to exhaust available remedies, AR 740 first requires the inmate to discuss the issue with a caseworker prior to initiating the grievance process. (AR 740.04 at 5). The procedure then continues as follows: (1) an Informal Grievance; (2) a First Level Grievance appealing the Informal Grievance decision to the warden; and (3) a Second Level Grievance, which is decided by the Assistant Director of Operations. (AR 740.05–.07 at 5–10). "In the event an inmate's claim is deemed inappropriate for review or not within the intended scope of this Regulation, the inmate may appeal that decision only to the next procedural level of review." (AR 740.03(5) at 4). "An inmate who is dissatisfied with the response to a grievance at any level may appeal the grievance to the next level" within five days after the return of a decision. (AR 740.03(6) at 4).

Here, the record is devoid of evidence showing that Plaintiff appealed the denial of his First Level Grievance by filing a second level grievance in accordance with AR 740.03(6). Further, Plaintiff does not dispute that he failed to file such an appeal. Accordingly, the Court finds that Plaintiff failed to exhaust his administrative remedies regarding Grievance Issue 60267.

### B. Grievance Issue 58154

As to Grievance Issue 58154, Defendants argue that Plaintiff failed to properly exhaust his available remedies because Plaintiff's grievances lacked factual allegations which would alert prison officials of Plaintiff's problem. (*See* Defs.' MSJ 15:10–16:26). Specifically, Defendants argue that while Plaintiff's grievances clearly demonstrate that Plaintiff felt he was wrongfully terminated from his employment position, "in none of these grievances does Plaintiff say he was subjected to retaliation for filing grievances and lawsuits" against officers. (*Id.* at 16). The Court agrees.

The level of detail necessary in a grievance to comply with grievance procedures will vary from system to system and claim to claim, but the prison's requirements, and not the PLRA, define the boundaries of proper exhaustion. *Jones v. Bock*, 549 U.S. 199, 218 (2007). Here, NDOC's administrative regulations provide that "[a]ll documentation and factual allegations available to the inmate must be submitted" with the Informal Grievance. (AR 740.05(5)(A) at 6). NDOC's regulations further state that inmates "shall provide a signed, sworn declaration of facts that form the basis for a claim that the informal response is incorrect" in the First Level Grievance. (AR 740.06(2) at 7). "This should include a list of persons, if any, who have relevant knowledge or information supporting the claim. Any additional relevant documentation should be attached at this level." *Id.*

Plaintiff's grievances fail to comply with NDOC's required level of factual specificity. Nowhere in Grievance Issue 58154 does Plaintiff allege that Pharris transferred him to a

disciplinary unit because Plaintiff "like[d] to file lawsuits and grievances." (Am. Compl. at 7). Similarly, Plaintiff's grievances are devoid of any mention of his allegation in this case that Officer Flores-Nava had knowledge of Plaintiff's authorized possession of the trimmers but nevertheless filed a notice of charges against Plaintiff. (*Id.* at 4). Furthermore, the Informal Grievance lacks Plaintiff's assertion that Officer Flores-Nava filed the notice of charges to retaliate against Plaintiff because Plaintiff "like[d] filing grievances and lawsuits on officers." (*Id.* at 5). Plaintiff would have known of these alleged facts at the time he filed his grievances and therefore Plaintiff's grievances fail to supply "[a]ll . . . factual allegations available to the inmate" as required by NDOC's grievance procedure. (*See* AR 740.05(5)(A) at 6). Instead, Plaintiff's grievances explain that he was wrongfully charged with an offense and was found not guilty of that charge, yet that the ramifications of the charge (i.e., the loss of his infirmary employment and the resulting level reductions) were not remedied:

> [I] was found not guilty. Insted [sic] of being reinstated to my job my caseworker changed my classification and removed me from my job and tried to place me back in the culinary to work 90 days before I could find a better job . . . . Not only did the caseworker wrongfully take my job I was level reduced to the disciplinary unit.

(Grievance Issue 58154 at 30–31); (*see also id.* at 5, 18).

Because Plaintiff's grievances lack the factual specificity required by NDOC's administrative regulations, Grievance Issue 58154 failed to properly exhaust Plaintiff's retaliation claim.

Moreover, even if NDOC's grievance procedures were unclear as to the required level of factual specificity, Plaintiff's grievances would still fail to exhaust his administrative remedies. When a prison's grievance procedures are silent or incomplete as to factual specificity, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." *Griffin*, 557 F.3d at 1120. A grievance need not include legal terminology or legal theories

unless they are in some way needed to provide notice of the harm being grieved. *Id.*  In *Griffin*, the plaintiff failed to mention in his grievance that the remedy to his problem, which had been previously ordered by a prison nurse, had not been implemented by the prison's staff. *Id.* at 1118–19.  As a result, the prison officials who were aware of the nurse's order reasonably believed that the order had solved the plaintiff's problem. *Id.* at 1121.  In light of these facts, the Ninth Circuit concluded that the plaintiff failed to properly exhaust his administrative remedies because he did not provide notice of the prison staff's alleged disregard of the nurse's order and the prison was never alerted "to the nature of his problem." *Id.*

      Similarly, Plaintiff failed to properly alert prison officials to the nature of his grievance in his appeals.  While Plaintiff argues Defendants retaliated against him for exercising his constitutional right to access the courts by filing grievances against officers, Plaintiff's grievances address the employment dispute between Plaintiff and his caseworkers.  It would be difficult for prison officials to determine from these grievances that NDOC's prison staff was retaliating against Plaintiff because he had filed grievances against officers in the past.  Factual details regarding conversations Plaintiff allegedly had with Defendants Officer Flores-Nava and Pharris would have alerted prison officials to the nature of Plaintiff's alleged wrong.  As it stands, Defendants could not have redressed the issue Plaintiff presents here—retaliation for filing grievances in violation of the First Amendment—when Plaintiff's grievances merely complain of an employment dispute.  Moreover, as in *Griffin*, prison staff addressing Grievance Issue 58154 could reasonably have believed that a response explaining Plaintiff is "not entitled to any specific job or assignment" sufficiently resolved Plaintiff's grievance and nothing more was required of them. (*See* Grievance Issue at 26).[7]

---

[7] Indeed, prisoners are not entitled to their preferred employment assignment. *Lewis v. Casey*, 518 U.S. 343, 346 (1996).

Accordingly, the Court finds that Plaintiff failed to exhaust his administrative remedies with regard to his First Amendment retaliation claim as required by 42 U.S.C. § 1997e(a), and Plaintiff's claims are therefore not proper before this Court.  Because the Court GRANTS Defendants' Motion for Summary Judgment, all remaining motions, including Plaintiff's Motion for Summary Judgment, (ECF No. 53), are DENIED as moot.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment, (ECF No. 56), is **GRANTED**.

**IT IS FURTHER ORDERED** that the following motions filed by Plaintiff are **DENIED**: Motion to Strike Defendants' Response and Reply, (ECF No. 92); and Motion to Strike Exhibit B, (ECF No. 72).

**IT IS FURTHER ORDERED** that the following motions filed by Plaintiff are **DENIED as moot**: Motion for Summary Judgment, (ECF No. 53); Motion for Preliminary Injunction, (ECF No. 77); Motion for Magistrate Judge to Reconsider, (ECF No. 93); and Motion to Compel, (ECF No. 97).

The Clerk of the Court shall enter judgment accordingly.

**DATED** this __10__ day of January, 2017.

_____
Gloria M. Navarro, Chief Judge
United States District Judge